UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 3:21-CR-90 JD |
| LEONTIS CORNELIUS | |

**OPINION AND ORDER**

Defendant Leontis Cornelius was indicted in a two-count superseding indictment for being a felon in possession of a firearm. (DE 15.) At the close of the Government's case-in-chief, Mr. Cornelius moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29. The Court reserved decision on the motion pending a jury verdict. The Jury returned guilty verdicts on both Counts. Having considered the motion, the Court will deny it.

A. **Relevant Evidence**

The Government's evidence relevant to the motion for acquittal can be summarized as follows: On May 13, 2020, shot-spotter notification system alerted South Bend police of a shooting in the vicinity of Mr. Cornelius's residence. Although Detective Bruno Martinsky wasn't one of the responding officers, he found out about the incident several days later, after receiving a police report from Sgt. Paul Daley. Detective Martinsky testified that he learned from the report that, when Sgt. Daley arrived at Mr. Cornelius's residence on May 13, Mr. Cornelius had a pistol and told Sgt. Daley that his family and guests were attacked by a shooter and he fired back in self-defense with that same pistol. The report was given to Detective Martinsky so that he could follow up on the incident and collect the pistol to have bullet casings test fired. On May 19, Detective Martinsky called Mr. Cornelius about the shooting and confirmed that he had used

the gun the week prior and still had the gun. Detective Martinsky then arranged for a meeting at Mr. Cornelius's residence so he could pick up the gun. When he arrived, Mr. Cornelius handed over a retail package with a Smith & Wesson pistol inside.

A year later, on June 27, 2021, Officer Garrett Payne responded to an emergency call at an address on Huey Street in South Bend and saw Mr. Cornelius coming from around a house with a rifle in hand. Officer Payne ordered Mr. Cornelius to drop the weapon and Mr. Cornelius complied, adding that he had "a license." Minutes later, Officer Shawn Frendenburg picked up the rifle from the ground and was clearing it of ammunition in the vicinity of where Mr. Cornelius was standing. Mr. Cornelius repeatedly asked him to stop because the ammunition cost $40 a round.

B. **Legal Standard under Rule 29**

Federal Rule of Criminal Procedure 29(a) governs motions for judgment of acquittal. When a defendant moves for judgment of acquittal pursuant to Rule 29, a court must ask whether evidence exists from which any rational trier of fact could find the "essential elements" of the crime beyond a reasonable doubt. *United States v. Garcia*, 919 F.3d 489, 496 (7th Cir. 2019). The movant faces a "nearly insurmountable hurdle" because the Court considers the evidence in the light most favorable to the Government and will grant the motion "only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." *Id.*; *United States v. Dewitt*, 943 F.3d 1092, 1096 (7th Cir. 2019) (citing *United States v. Blassingame*, 197 F.3d 271, 284 (7th Cir. 1999)) (internal quotations omitted). Thus, a Rule 29 motion is granted only if the record is devoid of evidence from which a jury could find guilt. *See United States v. Jackson*, 5 F.4th 676, 682–83 (7th Cir. 2021). When, as

here, a defendant makes a Rule 29(a) motion at the close of the Government's case, and the Court reserves decision, the court "must decide the motion on the basis of the evidence at the time the ruling was reserved." Fed. R. Crim. P. 29(b).

### C. Discussion

Mr. Cornelius is charged with being a felon in possession of a firearm in May 2020 and on June 27, 2021. The Government must establish four elements to prove Mr. Cornelius guilty of these charges: "(1) the defendant was convicted of a crime punishable by more than one year; (2) the defendant knowingly possessed a firearm; (3) the defendant knew of his felon status; and (4) the gun possessed by the felon had been in or affected interstate commerce." *United States v. Perryman*, 20 F.4th 1127, 1135 (7th Cir. 2021). There is plentiful evidence from which a rational trier of fact could find the essential elements of these crimes beyond a reasonable doubt.

In his motion, Mr. Cornelius doesn't contest that the Government has introduced sufficient evidence showing that he had been convicted of various felonies, that he knew of his felony convictions, and that the guns in question traveled in interstate commerce.[1] Instead, Mr. Cornelius argues that the Government has not presented evidence that he possessed a firearm either in May 2020 or on June 27, 2021. Mr. Cornelius notes that Detective Martinsky was not at the scene after the May 13 shooting, so he cannot provide evidence on whether Mr. Cornelius possessed the firearm at that time. He also argues that there is no evidence that Mr. Cornelius

---

[1] Indeed, there's ample evidence to support these elements. The Government introduced into evidence certified records of Mr. Cornelius's prior felony convictions, which also show that he was sentenced on several of them to a term of imprisonment exceeding one year. Also, United States Probation Officer Cameron Wilbur testified that, in relation to Mr. Cornelius's federal conviction for illegal possession of a firearm, he advised Mr. Cornelius that, as a felon, he could not possess a firearm. Finally, ATF Special Agent Kyle Lerch testified that the guns in question were firearms, that is, weapons "which will or [are] designed to or may readily be converted to expel a projectile by the action of an explosive." 18 U.S.C. § 921 (defining a firearm). Agent Lerch also expressed his opinion that both guns had traveled in interstate commerce.

3

possessed the firearm between May 13 and when he turned the gun over to Detective Martinsky. As for June 27, 2021, Mr. Cornelius argues that Officer Payne never saw him possessing the rifle and that it only appeared to Office Payne that Mr. Cornelius possessed it. Mr. Cornelius further discusses the testimony of Officer Frendenburg and argues that his plea to Officer Frendenburg not to clear the bullets from the rifle has no evidentiary value. Instead, according to Mr. Cornelius, his statement only demonstrates his basic, and likely inaccurate, understanding of how much ammunition costs, "not that the ammunition was individually possessed by Mr. Cornelius." (DE 62 at 3.) Mr. Cornelius's arguments are unavailing.

There is sufficient evidence from which a rational trier of fact could find beyond reasonable doubt that Mr. Cornelius possessed the firearms in May 2020 and then again on June 27, 2021. To prove possession, "the Government must show that the defendant had the ability to exercise control [over the object] or the power to possess it." *United States v. Harris*, 325 F.3d 865, 869 (7th Cir. 2003). The evidence recounted above, *see supra* at 1–2, viewed in the light most favorable to the Government, establishes that Mr. Cornelius possessed a firearm on May 13, 2021. He admitted as much to Detective Martinsky when Detective Martinsky called him and confirmed over the phone that he had used the gun the week prior and still had the gun. Therefore, by his own admission, Mr. Cornelius possessed the firearm, that is, had the ability to exercise control over the gun and the power to possess it on May 13 when he was shooting back at his assailant and until he turned it over to Detective Martinsky. That he disputes the reason for his possession does not negate the evidence of possession.

The same is true of the June 27, 2021, incident. Mr. Cornelius's argument that Officer Payne did not see Mr. Cornelius possess the gun is baseless. Officer Payne testified that he saw Mr. Cornelius holding the gun and ordered him to drop it to which Mr. Cornelius responded that

he had a license. This account is corroborated by Officer Payne's bodycam video recording. Similarly, although Mr. Cornelius elects to interpret his admonition to Officer Frendenburg to stop clearing the bullets as merely demonstrating his basic understanding of the cost of ammunition, a rational juror could reasonably infer that the comments show his knowledge of this particular rifle and a concern for how the police were treating his property. Mr. Cornelius's pleas regarding the ammunition are corroborated by Officer Frendenburg's bodycam video recording. On the basis of these facts, it cannot be said that the record is devoid of evidence from which a jury could find possession.

### D. Conclusion

For these reasons, the Court DENIES Mr. Cornelius's Rule 29 motion for judgment of acquittal.

SO ORDERED.

ENTERED: May 12, 2023

                                                  /s/ JON E. DEGUILIO
                                                  Chief Judge
                                                  United States District Court